**Spiro T. AGNEW and William H. Woolverton, Plaintiffs,**

v.

**ALICANTO, S.A. and William H. Shaw, Defendants.**

No. CV–86–4321.

United States District Court, E.D. New York.

April 25, 1989.

356

Robert P. Knapp, Jr., New York City, for plaintiff Spiro T. Agnew.

Lansing R. Palmer, New York City, for plaintiff William H. Woolverton, Jr.

Meyer, Suozzi, English & Klein, Mineola, N.Y., for defendants.

Hendler, Murray & Mait, P.C., New York City, for Fidelity & Deposit Co. of Maryland.

## MEMORANDUM AND ORDER

WEINSTEIN, District Judge.

This case illustrates the interplay of preliminary remedies under New York and Federal Practice. More particularly, it presents the issue of the right to counsel fees when a temporary restraining order is issued predicated on a proposed attachment as a provisional rememdy.

Defendants Alicanto, S.A. and William H. Shaw move to recover against plaintiffs' undertaking, and to obtain an order pursu-

ant to Rule 65.1 of the Federal Rules of Civil Procedure, awarding defendants $302,564.77 plus interest as costs and damages. These damages constitute legal fees claimed to have been sustained by reason of a temporary restraining order granted on December 30, 1986. Fidelity & Deposit Company of Maryland ("F & D") has cross-moved for an order directing plaintiffs, Spiro T. Agnew and William H. Woolverton, to exonerate F & D from any liability it may have as a consequence of the undertaking, for judgement against plaintiffs in such amount as F & D may be directed to pay to defendants, and for its own legal fees. For the reasons indicated below, the motions in large part must be granted.

### FACTS

Plaintiffs by an Order to Show Cause moved for an order of attachment against defendants' property, including specified bank accounts and cooperative apartment shares, and for an *ex parte* temporary restraining order to restrain defendants from transferring assets. The court granted a temporary restraining order on December 30, 1986. Pursuant to the order, $342,000 was deposited with the Clerk of the Court.

Plaintiffs were ordered to post a $250,000 undertaking of which sum $200,000 was

> conditioned that the plaintiffs will pay to the defendants all costs and damages, *including reasonable attorney's fees*, which may be sustained by reason of this temporary restraining order if the defendnats recover judgment or if it is finally determined that the plaintiffs were not entitled to an attachment of defendants' property....

(Emphasis added.) A bond on the undertaking from F & D reads, in pertinent part:

> [F & D] does hereby, pursuant to the Statute in such case made and provided, undertake that the Plaintiffs will pay to the Defendants Alicanto, S.A. and William H. Shaw so enjoined, such damages and costs not exceeding the sum of two hundred fifty thousand dollars as it may sustain by reason of the injunction, if the Court shall finally decide that the Plain-

tiffs were not entitled thereto; *such damages and costs to be ascertained by a reference, or otherwise as the Court shall direct.*

(Emphasis added.)

The temporary restraining order was granted without notice because the defendant Alicanto, S.A. is a foreign corporation not licensed to do business in the State of New York, the defendant Shaw is a non-domiciliary residing outside the state and the bulk of the property to be attached were liquid funds that easily could be transferred out of New York by wire upon receipt of notice. A temporary restraining order is a form of injunction issued pursuant to what were formerly equitable powers of the court. Wright & Miller, Federal Practice and Procedure § 2741 (1973).

Defendants requested adjournment of the plaintiffs' attachment motion so that it could be consolidated with defendants' forthcoming motion for summary judgment. Defendants filed their motion for summary judgment on April 24, 1987. The temporary restraining order was continued in effect by consent until May 14, 1987 when plaintiffs sought an extension of time to oppose the motion for summary judgment.

At the hearing on that date, the court dissolved the temporary restraining order and denied plaintiffs' motion for an order of attachment. Since the plaintiffs sought the delay and there appeared to be substantial issues on the merits, it was not fair to keep the defendants' assets tied-up. Plaintiffs requested a rehearing. On May 27, 1987, the court again denied plaintiffs' motion for an order of attachment on the ground that plaintiffs had not shown sufficient probablity of success on the merits as required by New York Civil Practice Law and Rules 6212, vacated the temporary restraining order and continued in full force plaintiff's undertaking to "be available to pay to defendants all costs and damages, *including reasonable attorney's fees* sustained by reason of the temporary restraining order." (Emphasis added.)

The Court of Appeals for the Second Circuit then stayed the order to vacate the

temporary restraining order pending appeal by the plaintiffs. Plaintiffs did not succeed on their appeal. Their application for rehearing was denied by the Court of Appeals on February 3, 1988. The Court of Appeals granted a stay of the mandate pending plaintiffs' petition to the Supreme Court for a writ of certiorari. Defendants' moving affidavit in the Court of Appeals disclosed that as of the date of filing, their attorney's fees exceeded $265,000. Defendants therefore sought an increase in the security to $350,000 "of which $300,000 should be allocated for costs and damages *including reasonable attorney's fees.*" (Emphasis added.) On February 29, 1988, as a condition for staying the mandate, the Court of Appeals granted an order enlarging the plaintiffs' undertaking to $350,000. By implication the appellate decision indicated that attorney's fees would be an available component of costs and damages.

In the midst of this appellate litigation on the attachment orders, this court denied defendants' motion for summary judgment. On May 4, 1988, the Supreme Court denied plaintiffs' petition for certiorari.

It is now established that plaintiffs were properly denied attachment of defendants' assets. Defendants consequently seek to recover against plaintiffs' undertaking. Defendants contend that they are entitled to recover their trial and appellate attorney's fees incurred as a consequence of the wrongful restraint, including the expenses incurred sustaining the vacatur on appeal, opposing applications for stays, assessing damages against the undertaking, travel expenses, and interest on defendants' damages from the time the restraining order was vacated.

### I.

Defendants' right to recover their attorney's fees against plaintiffs' undertaking is said to turn on whether the temporary restraining order of December 30, 1986 was granted pursuant to Federal Rule of Civil Procedure 65 or pursuant to New York Civil Practice Law and Rules 6210

and 6313. Absent a statutory directive, attorney's fees are not generally recoverable on a bond posted to secure a temporary restraining order pursuant to Rule 65(c). *See Missouri Pac. Ry. v. Larabee,* 234 U.S. 459, 34 S.Ct. 979, 58 L.Ed. 1398 (1914); *Umeko, Inc. v. New York Coat, Suit, Dress, Rainwear & Allied Workers Union,* 484 F.Supp. 210, 211–12 (S.D.N.Y. 1980); 7 Moore's Federal Practice ¶ 65.10[1]. Under New York's section 6313, however, liability on an undertaking extends to any attorneys' fees incurred in vacating the wrongful restraint or injunction. *See Olsen v. United States Fidelity & Guaranty Co.,* 230 N.Y. 31, 128 N.E. 908 (1920); *Israel Commodity Co., Inc. v. Banco,* 50 Misc.2d 362, 270 N.Y.S.2d 283 (S.Ct.N.Y.Co.1966). The temporary restraining order itself makes no mention of the authoritative rule.

The language of the undertaking and the fact that the temporary restraining order was granted *ex parte* and was sought in connection with an order of attachment governed by "the law of the state in which the district court is held" (Fed.R.Civ.P. 64), suggests that the restraint was granted on conditions embodied in New York law respecting liability for attorney's fees. The language of the order to show cause of December 30, 1986 and the order dissolving the temporary restraining order dated May 27, 1987 together reflect an intent to secure defendants against damages, including attorney's fees, normally available under New York law for the wrongfully enjoined use of their property.

The temporary restraining order was granted on the specific condition that plaintiffs post an undertaking to cover defendants' costs and damages, *including* reasonable attorney's fees. The language submitted by plaintiffs in their order to show cause tracks New York law providing for the inclusion of attorney's fees incurred as a result of wrongful restraint or attachment. The bond itself covers "damages and costs ... as the Court shall direct" and makes reference to the restraint "as more

fully set forth in *the order to be entered."* (Emphasis supplied). The order vacating the restraint continued the undertaking, again including reference to attorney's fees sustained by reason of the temporary restraining order.

Because the plaintiffs' order to show cause sought both an order of attachment and a temporary restraining order, and an attachment would be granted under New York Civil Practice Law and Rules 6201 and 6212, it is reasonable to conclude that plaintiffs moved for the *ex parte* restraining order pursuant to New York Civil Practice Law and Rules 6210 which provides:

> Upon a motion on notice for an order of attachment, the court may, without notice to the defendant, grant a temporary restraining order prohibiting the transfer of assets by a garnishee....

Section 6210 is one of the provisional remedies available under Federal Rule 64. The court may, and in this case did, require an undertaking as a condition to granting the temporary restraining order pursuant to New York Civil Practice Law and Rules 6313(c). *See* 7 Moore's Federal Practice ¶¶ 64.04[3], 65.05 (comparing Rule 65 temporary restraining order to Rule 64, incorporating New York's section 6210, permitting a temporary injunctive remedy "as an incident to a legal claim for the purpose of effecting an equitable attachment").

Additional support for the conclusion that New York law provided the authority for the temporary restraining order stems from the jurisdiction of the court in the underlying action. Eight of the ten plaintiffs' claims are based on diversity jurisdiction, while two arise under RICO, 18 U.S.C. § 1964. Federal law governs the nature of damages recoverable under an injunction bond given in a federal question case. *See Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161, 59 S.Ct. 777, 83 L.Ed. 1184 (1939). The question of what law should apply in diversity cases in the federal courts raises *Erie* problems where there are differences in security requirements between New York and federal law. *See* Note, *Interloc-*

*utory Injunctions and the Injunction Bond*, 73 Harv.L.Rev. 333, 351–53 (1959). *See also Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949); *Guaranty Trust Co. v. York*, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945). Because New York Civil Practice Law and Rules 6210 is available as a remedy under Federal Rule 64, and permits the parties in a federal court to proceed according to New York law, New York law governing damages available for a wrongful restraint is appropriate in what is primarily a diversity action.

In the alternative, even though attorney's fees are not generally recoverable pursuant to federal law, where the temporary restraining order expressly provides otherwise, equity favors defendants' recovery of attorney's fees where defendants relied on the security of the undertaking in defending its action. The trial court has wide discretion to impose terms as a condition of granting or withholding a restraint or an injunction. *See* 7 Moore's Federal Practice, ¶ 65.10[1].

The allegations that defendants fraudulently induced the court to vacate the temporary restraining order are not sustained. No damages in addition to attorney's fees have been sought or shown. Defendants' motion to recover attorney's fees against plaintiffs is granted.

## II.

■ The attorney's fees requested by defendants in the amount of $302,564.77 are exhorbitant and unreasonable. The propriety of an order of attachment or a temporary restraining order in this case presented simple issues of law and fact. It should have been promptly disposed of by a stipulation or by elementary papers in a simple motion. Instead, the defendants insisted on consolidating the attachment motion with their motion for summary judgment. They thus contributed to and are partly responsible for the delay, complexity and, ultimately, the cost of the relevant proceedings. A party "cannot recover on the un-

dertaking, as damages ..., his expenses in defending the action when he could have freed himself from the injunction by a simple motion." *Olsen v. United States Fidelity & Guaranty Co.*, 230 N.Y. 31, 36, 128 N.E. 908 (1920). Because it is impossible to disentangle counsels' work on the attachment and temporary restraining orders from their work on the summary judgment motion, the court is driven to a quantum meruit analysis.

Based upon the time that reasonably should have been expended in opposing the attachment motion and vacating the temporary restraining order, the maxixmum recovery that good conscience permits is the fees for two attorneys billing 100 hours each at a rate of $250 per hour, for a total of $50,000. No allowances for para-professionals or expenses are warranted.

## III.

■ F & D cross-moves for exoneration, to have plaintiffs first pay any award to defendants on this motion, and for a judgment over against plaintiffs for its legal and other expenses and for any amount it is directed to pay defendants on this motion.

F & D first contends that it should not be held liable on its undertaking because F & D executed the undertaking in the belief that any temporary injuction was to be issued pursuant to federal law excluding liability for attorney's fees. F & D had an obligation to examine all papers in connection with its bond, particularly when the bond itself contemplated further conditions in restraining "the Defendants from doing certain things as more fully set forth in *the order to be entered.*" (Emphasis supplied.) F & D cannot now raise the objection that the undertaking as decribed in the order did not conform to the language of the bond.

The undertaking required in connection with the temporary restraining order should have put F & D on notice that attorney's fees might be included as costs and damages. Whether attorney's fees are included should be clarified by the bonding company before it provides a bond or as soon as it becomes practicable to do so. In the absence of such clarification it is subject to liability for attorney's fees if the person who obtained the bond might be held liable.

F & D's joint and several liability as surety on the undertaking extends to any reasonable fees paid by defendants to their attorneys in order to free themselves of the wrongful restraint. *See Olsen v. United States Fidelity & Guaranty Co.*, 230 N.Y. 31, 128 N.E. 908 (1920). F & D's liability is limited to those attorney's fees the court finds are reasonable—that is, fees in the amount of $50,000.

Pursuant to the indemnification clause in the plaintiffs' Applications for Court Bond, plaintiffs · agreed to indemnify F & D against F & D's own legal expenses. It makes plaintiffs liable for

all loss, liability, costs, damages, attorney's fees and expenses whatever, which the Company may sustain or incur by reason of executing said bond, in making any investigation on account thereof, in prosecuting or defending any action which may be brought in connection herewith, in obtaining a release therefrom, and in enforcing any of the agreements herein contained.

The reasonable fees and expenses payable to F & D under this indemnity agreement by plaintiffs are $12,500.

## CONCLUSION

1. Defendants shall recover from plaintiffs jointly $50,000 for legal fees.

2. F & D shall recover from plaintiffs jointly $12,500.

3. Should plaintiffs fail to promptly pay defendants $50,000, F & D shall pay this sum, in which event plaintiffs shall be jointly liable to F & D for this amount in addition to $12,500.

4. Interest shall be computed from the date of this order. In computing the

amounts allowed, the court has taken into account delays in payment.

So ordered.